UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ROGER P. HUMPHRIES, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>SECRETARY, DEPARTMENT OF )<br>VETERANS AFFAIRS, DENIS )<br>MCDONOUGH, )<br>)<br>    Defendant. ) | Cause No. 1:22-CV-212-HAB |

**OPINION AND ORDER**

Plaintiff Roger Humphries ("Humphries") failed in his primary role as a Training Officer with the Department of Veterans Affairs ("VA"): training. That, and his regrettable decision to send a picture of his genitals to a co-worker, resulted in his termination. Relying on Humphries' vocational failings, the VA moved for summary judgment on Humphries' Title VII claims.[1] (ECF No. 22). That motion is now fully briefed (ECF No. 24, 30, 33) and ready for ruling.

**I.     Factual Background[2]**

Humphries, a black male, was hired by the VA as a police officer in May 2011. Over the next decade he was promoted several times, finally reaching the rank of Major, Supervisory Security Specialist, and Training Officer. At all relevant times, Brian Reneau ("Reneau") was Chief of Police and Humphries direct supervisor. Reneau is white.

---

[1] The VA also moved to correct its exhibits filed in support of its motion for summary judgment. (ECF No. 32). Humphries having not objected, that motion is GRANTED.

[2] Humphries violated N.D. Ind. L.R. 56-1(b)(2) by failing to separately file a response to the VA's statement of material facts. Instead, he included his response within his brief, responding to some, but not all, of the VA's facts, and failing to include the required verbatim restatement.

In 2016, Humphries became Law Enforcement Training Manager. He was responsible for the training of about 45 officers across the VA's northern Indiana campuses. This included making sure officers completed training and that the training was documented. Humphries was solely responsible for creating and maintaining training records.

One of the training areas under Humphries' supervision was firearms. In October 2018, Humphries conducted a semi-annual gun range training. At the end of that training, Humphries and Reneau had a dispute over the number of rounds in an ammunition box. Humphries documented this dispute in a Report of Contact form. Humphries would document two additional interactions with Reneau regarding ammunition counts over the next month, both on Report of Contact forms. At the VA, Report of Contact forms can memorialize a workplace incident. It is not, however, used to initiate an employment discrimination claim or to submit an EEO complaint.

Humphries claims that these Report of Contact forms were the beginning of the end of his VA career. Everything that follows, he asserts, was either in retaliation for the forms or discrimination because of his race.

In early 2019, Reneau gave Humphries an unsatisfactory performance review for calendar year 2018 based, Reneau claimed, on deficient training records. But Reneau failed to follow VA rules that required verbal and written warnings before an unsatisfactory performance review. So Humphries complained to HR, and the 2018 performance review was changed to fully successful.

In May 2019, Humphries discovered that homemade business cards he kept on his desk had been taken. He filed a police report about the missing cards, but they were never found. Days later, Plaintiff discovered that candy he kept on his desk was also missing. He filed another police report, but the "crime" again went unsolved. The total amount of loss from these two "thefts" was just over $40.

Later that month, a job listing was posted for the Deputy Chief, a position that was vacated when Reneau became Chief. Deputy Chief was one level above Humphries' position, and traditionally Humphries would have moved into the Deputy Chief position. But that did not occur. In fact, the job posting was withdrawn six weeks after it was posted. This was unusual, as the position had always been filled immediately in the past. The position was not filled until March 2021 when Jeffrey Terry, a black male, was hired.

Humphries believes that he wasn't promoted to Deputy Chief because Reneau wanted a different replacement. Humphries claims that the qualifications for the Deputy Chief position were changed so that John Jones, a white male, would qualify.[3] Humphries also claims that Reneau was "grooming" Jones for the job, which included telling subordinates to report to Jones instead of Humphries, and taking Jones to conferences that Humphries believed he should have attended.

Humphries contacted an EEO counselor at the VA regarding the "thefts" and his concerns about Jones. Humphries was emailed a Notice of Right to File a Discrimination Complaint in August 2019, which gave him 15 days to file a formal EEO complaint. Humphries missed that deadline, so his late-filed complaint was dismissed. He would later try to file another EEO complaint based on the same facts, which was also dismissed.[4]

Part of Reneau's responsibility as Chief was to perform a bi-annual inspection of department training records. One such inspection occurred in June 2019. The inspection identified a plethora of issues, including:

- records that the trainee officer failed to initial;

---

[3] It is unclear from the record whether the qualifications were changed. The dispute is over how veteran-status was weighed in the hiring process. The VA asserts that "veteran preference" had been in place for years before Reneau was Chief. Humphries does not dispute that veteran preference was in place but claims that it had not been applied to the Deputy Chief position. The Court finds this dispute immaterial but notes it for the record.

[4] The parties dispute whether Humphries can present claims based on these complaints. The VA argues that they are time-barred, but Humphries claims that issues at the VA caused him to be "mis-directed" about his appeal rights. The Court concludes that this dispute is irrelevant because none of Humphries claims have merit.

- records signed by the instructor but not the trainee officer;

- discrepancies in ammunition counts; and

- apparently falsified records, including records showing that officers had completed training on days they were on leave.

The results of the record review was sent to the regional chief, who recommended that the Battle Creek, Michigan, VA's police service conduct a peer review of the records. Pending that review, Reneau relieved Humphries of his training duties and put him on patrol.

Less than a week after the inspection, Humphries filed a complaint to the VA's Office of Accountability and Whistleblower Protection. The parties don't tell the Court what was in that complaint. Reneau affirms, though, that he was not aware the complaint was filed.

The peer review by the Battle Creek VA confirmed Reneau's findings on the training records. As a result, the training records were "decertified as not being validated, dependable or accurate."

The peer review also triggered the convening of an Administrative Investigation Board ("AIB"). Humphries, Reneau, and several other officers testified before the AIB. The AIB, again, largely confirmed the findings of Reneau's inspection. A subject matter expert called by the AIB concluded that Humphries integrity was at issue. That expert found Humphries testimony before the AIB to be not credible and deceptive, and further found that Humphries falsified training records.

While all this was going on, the VA received a complaint of sexual harassment against Humphries in September 2019. The complaint included portions of text conversations between Humphries and the complainant. Those texts included a full image of Humphries genitals, colloquially known as a "dick pic," as well as suggestions that Humphries and the complainant

4

find more privacy at the VA facility, something Humphries could facilitate with police officer access. Humphries does not dispute that he sent the texts but argues that they were between two adults in a consensual relationship and that they lacked context.

In any case, Michael Hershman ("Hershman"), the VA's regional healthcare Director, removed Humphries firearms authority and badge, and placed him on administrative duty pending an investigation of the harassment allegations. Humphries was also physically relocated to a building away from the complainant. According to Humphries, he had no duty assignments during this time, and the room to which he was relocated was very cold.

In January 2020, the VA's regional healthcare Associate Director, John Shealey ("Shealey"), issued a notice of proposed removal to Humphries. The purpose of the notice was to advise Humphries of charges of misconduct, including conduct unbecoming of an officer (related to the text messages) and negligence and carelessness in the performance of his duties (related to the training records). The notice documented 93 errors in the training records. Humphries submitted a written and oral reply to the notice.

After considering the notice, Humphries response, and the evidence file, Hershman terminated Humphries. Hershman called the evidence "overwhelming and significant." The termination was set to take effect February 12, 2020. Humphries, after consulting with a VA human resources representative, resigned in lieu of the termination.

The same day he resigned, Humphries filed an appeal with the Merit Systems Protection Board ("MSPB") claiming that his resignation was involuntary. The MSPB held a three-day hearing and found that Humphries failed to carry his burden. An appeal of that decision was denied. Humphries then filed a formal EEO complaint alleging constructive discharge and retaliation. A

VA administrative law judge found that Humphries failed to prove he was constructively discharged in retaliation for protected EEO activity. This lawsuit followed.

## II. Legal Analysis

### A. *Summary Judgment Standard*

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in their favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists cannot create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). A court is not "obliged to research and construct legal arguments for parties." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

**B.     *The VA had Non-Pretextual Reasons to Fire Humphries***

The Court will begin with Humphries' claims of racial discrimination. The Court's analysis is hampered given that just over six pages are devoted to his legal arguments, almost all of them arguing that a "convincing mosaic" of discrimination exists. (ECF No. 30 at 15-21).

Of course, "convincing mosaic" hasn't been a legal test in this Circuit for almost a decade. *Ortiz v. Werner Enter., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) ("Today we reiterate that 'convincing mosaic' is not a legal test."). Indeed, "any decision of a district court that treats this phrase as a legal requirement in an employment-discrimination case is subject to summary reversal." *Id*. Instead, the legal standard

> is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action. Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the "direct" evidence does so, or the "indirect" evidence. Evidence is evidence. Relevant evidence must be considered and irrelevant evidence disregarded, but no evidence should be treated differently from other evidence because it can be labeled "direct" or "indirect."

*Id*. All but Humphries' final two argument paragraphs, then, address a standard that this Court cannot apply.

Those final two paragraphs reference *Ortiz* and the *McDonnell Douglas* framework. Discrimination claims may be reviewed on summary judgment under the direct or the burden-shifting methodologies created by *McDonnell Douglas. v. Green*, 411 U.S. 792 (1973). *See Smith v. Chicago Transit Auth.,* 806 F.3d 900, 905 (7th Cir. 2015) (noting the *McDonnell Douglas* framework is just "a formal way of analyzing a discrimination case when a certain kind of circumstantial evidence – evidence that similarly situated employees not in the plaintiff's protected class were treated better – would permit a jury to infer discriminatory intent."). When a plaintiff responds to a motion for summary judgment on an intentional discrimination claim by relying on

the burden-shifting framework created by *McDonnell Douglas* a court should assess the case in those terms. *Id.*; *see also Ferrill v. Oak-Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017) (noting that *McDonnell Douglas* burden-shifting analysis has not been displaced). Because this burden-shifting framework is the only still-surviving legal standard Humphries references, the Court will use it.

Under the burden shifting methodology, Humphries must first establish several prima facie elements of discrimination. Humphries must show that: 1) he is a member of a protected class; 2) he was meeting his employer's legitimate performance expectations; 3) he suffered an adverse employment action[5]; and 4) other similarly situated employees who were not members of the protected class were treated more favorably. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).

If Humphries establishes a prima facie case, the burden of production shifts to the VA to offer a permissible, nondiscriminatory reason for the adverse employment action. *Id*. If the VA carries this burden, Humphries must show that the VA's purported reasons are a pretext for discrimination or that the decision was tainted by impermissible, race-based motives. *Id*. at 143 "'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Id*. (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

The Court finds that it can resolve Humphries' claims by going straight to the pretext inquiry. *See Holmberg v. Baxter Healthcare Corp.*, 901 F.2d 1387, 1391 (7th Cir. 1990) (where plaintiff has not shown pretext, it is not necessary to decide whether a prima facie case has been

---

[5] Humphries never specifies the adverse employment action. For expediency purposes, the Court will go directly to the ultimate adverse employment action, that being Humphries' proposed termination.

made). The VA has put forward two credible explanations for Humphries' proposed termination: the training records issues and conduct unbecoming an officer.

The training records first. Humphries does not, because he likely cannot, dispute the findings that the records were in disarray. Three levels of review, conducted by three entities, confirmed this was the case. Ninety-three records were flagged as defective, deficient, or falsified. Given that Humphries was the *training* officer, responsible for *training* and maintaining *training* records, such widespread issues with the *training* records would seem an obvious grounds for termination.

Rather than attack the findings, Humphries concocts a conspiracy. He claims that, because prior informal record reviews had found no irregularities (he submits no evidence to prove that fact[6]), and because a co-worker testified that Humphries was "meticulous" in his recordkeeping, that "the inference is that Reneau tampered with the training records and then with the assistance of Hershman, triggered an external investigation where the outcome relative to the findings was assured." (ECF No. 30 at 19).

An intriguing story, but not enough to prove pretext. Under *McDonnell Douglas*, Humphries must show that the training record issues were "a lie, specifically a phony reason for some action." *Tibbs v. Admin. Off. of the Ill. Courts*, 860 F.3d 502, 506 (7th Cir. 2017). Simply claiming that Reneau and Hershman conspired to tamper with the records doesn't make it so. Without some evidence, *any evidence*, to support Humphries' claims, the Court concludes that the

---

[6] Humphries points to deposition testimony from the VA's program manager, who testified that she, along with Humphries and Reneau, met to review the training records "more than seven times" between May 2017 and December 2019. (ECF No. 31-2 at 6). Humphries incorrectly claims that she testified that the meetings "took place more than seven times a year." (ECF No. 30 at 8). In any event, at no time during that deposition did the program manager testify that these periodic reviews were clean. To the contrary, she testified that she "would give the information back that needed to be corrected." (ECF No. 31-2 at 9).

9

twice-confirmed problems with the training records under Humphries' control were a non-pretextual reason for his proposed termination.

And that's to say nothing of Humphries' interest in adult photography. Again, Humphries does not dispute the content of any of the texts relied on by the VA. He does not dispute that he sent a picture of his penis to a co-worker. Rather, Humphries claims that he was not given "due process" in the investigation of the sexual harassment claims, and that the text messages reviewed by the VA were "incomplete." He also notes that he and the complainant were in a consensual relationship[7], and that his genital picture was shot on his own time.

No matter the broader context, the Court has little trouble concluding that texting pictures of one's genitals to a co-worker falls well-within the range of conduct unbecoming an officer. It shows a flaw in judgment that should disqualify a person from almost any job, particularly one tasked with enforcing the law. But more importantly, Humphries has designated no evidence that the VA didn't take the allegations seriously. To the contrary, the evidence showed that Hershman found the text messages "particularly disturbing." (ECF No. 23-30 at 11). The Court finds no evidence suggesting, much less proving, that the conduct unbecoming charge was a pretext for Humphries firing.

Put simply, the record shows that Humphries failed in his role as a VA police officer. There were 93 documented training failures under his watch. Rather than protect VA employees, he sent them pictures of his penis. Nothing in the record suggests that his proposed termination and eventual resignation were because of reasons other than these disturbing facts. There are no facts

---

[7] Humphries seems to be implying, without outright saying it, that the picture of his penis was solicited or at least welcomed by the complainant. But the Court views such an implication the same as a claim that a taco is a sandwich—almost certainly wrong and ridiculous on its face.

10

that would allow a reasonable finder of fact to conclude that Humphries was unlawfully discriminated against, so summary judgment will be entered for the VA.

**C.**     *Humphries has Waived any Claim of Retaliation*

The second claim in Humphries' complaint is for retaliation. In pursuing such a claim, "plaintiffs must offer evidence of three elements: (1) they engaged in protected activity, (2) they suffered adverse employment actions, and (3) there was a causal connection between the protected activity and the adverse employment actions." *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015). The same burden-shifting under *McDonnell Douglas* that applies to the discrimination case also applies to Humphries' retaliation claim. *Miller v. Am. Fam. Mut. Ins.*, 203 F.3d 997, 1007 (7th Cir. 2000).

Humphries' claim fails on the merits, but the Court need not get that far. "Perfunctory or undeveloped arguments are waived." *M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017). Humphries' arguments don't even reach the level of perfunctory. As far as the Court can tell, he uses the term "retaliation" only twice in his argument, and only when listing his causes of action. (ECF No. 30 at 16, 22). There is no discussion of the legal standard for retaliation claims, or an attempt to show how the facts here would establish such a claim. The Court will not make these arguments on Humphries' behalf. Summary judgment for the VA will be entered.

**D.**     *Humphries has Waived any Claim of a Hostile Work Environment*

Finally, Humphries' complaint alleges a hostile work environment. To establish a claim for a racially hostile work environment, a plaintiff must show: "(1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was severe and pervasive so as to alter the conditions of the employee's environment and create a hostile or abusive working

11

environment; and (4) there is a basis for employer liability." *Mason v. S. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000).

Like Humphries' retaliation claim, the Court need not reach the merits of the hostile work environment claim. Humphries' brief does not discuss the elements of such a claim. No attempt is made to establish those merits. If Humphries did not see fit to make the argument, the Court will waste no more of its time on this specious lawsuit. Summary judgment will be entered for the VA.

### III. Conclusion

For these reasons, the VA's motion for summary judgment (ECF No. 22) is GRANTED. The clerk is ORDERED to enter judgment for the VA and against Humphries.

SO ORDERED on May 16, 2024.

s/ *Holly A. Brady*  
CHIEF JUDGE HOLLY A. BRADY  
UNITED STATES DISTRICT COURT